UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert HAMM, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Willis Judge BUTLER, Les Wallick Fuller,
Dayton Bud Evans, Jr. and Larry Dale
Washington, Defendants-Appellants.

Nos. 80–1315, 80–1331.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 19, 1981.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

Edward D. Foreman, P.A., Thomas E. Reynolds, St. Petersburg, Fla., for defendant-appellant in No. 80–1315.

William C. Bryson, Peter E. Scheer, Washington, D. C., for plaintiff-appellee in both cases.

Randy Schaffer, Houston, Tex., for Washington.

Melvyn C. Bruder, Dallas, Tex., for Butler, Evans and Fuller.

David Baugh, Asst. U. S. Atty., Beaumont, Tex., for plaintiff-appellee in 80–1331.

Before BROWN, AINSWORTH, CHARLES CLARK, GEE, RUBIN, GARZA, REAVLEY, POLITZ, RANDALL, TATE, SAM D. JOHNSON and WILLIAMS, Circuit Judges, En Banc, Unit A.

AINSWORTH, Circuit Judge:

This case presents a constitutionally important conflict between a trial judge and a government prosecutor over the right of the Government to dismiss indictments against defendants who, after having pleaded guilty to criminal charges, cooperated with the Government in the prosecution of the leaders of a large drug-smuggling conspiracy.

The appellants, Robert Hamm, Willis Butler, Les Fuller, Dayton Evans, Jr., and Larry Washington, appeal from the district court's denial of the Government's motion to dismiss the indictments against them, and the court's denial of their motions to withdraw their guilty pleas. The Department of Justice and the local United States Attorney, who prosecuted the cases, join with the appellants in this appeal to set aside the district court's ruling. A panel of this court held that the district court erred in denying the Government's motion to dismiss the indictments, 638 F.2d 823 (5th Cir. 1981). The court then voted to rehear the case en banc, 644 F.2d 354 (5th Cir. 1981), thus vacating the panel opinion. See Fifth Circuit Local Rule 17. On rehearing en banc, we again find that the district court should have granted the United States Attorney's motion to dismiss the indictments and accordingly reverse.

*Facts and Procedural History*

Appellants Fuller, Washington, Butler and Evans and ten others were named in a multicount indictment on January 16, 1979, alleging their involvement in the shipment of a large quantity of marijuana from Colombia to the United States.[1] Appellant Hamm was indicted on May 1, 1979, for his participation in several large marijuana shipments.[2] Pursuant to plea-bargaining agreements with the United States Attorney, each of the appellants pleaded guilty to one count and the Government dismissed all

---

1. Fuller, Washington, Butler and Evans were each indicted on one count of conspiracy to violate the drug laws under 21 U.S.C. §§ 846 & 963 and one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). In addition, Fuller and Evans were indicted for importation of marijuana into the United States in violation of 21 U.S.C. § 841(a), and Fuller was indicted for three firearm counts under 18 U.S.C. § 924(b) and 26 U.S.C. §§ 5861(d) & 5871.

2. The indictment of May 1, 1979, listed Hamm as "BOB (LAST NAME UNKNOWN)." He was formally named in a superseding indictment on July 10, 1979, and charged with one count of conspiracy to violate the racketeering laws under 18 U.S.C. § 1962(d) and two counts of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

other counts in return for their cooperation in the prosecution of the leaders of the drug-smuggling conspiracy.[3] At the time of the plea, no explicit agreements existed as to sentencing.[4] The district judge accepted the guilty pleas and postponed sentencing to assure the appellants' cooperation. After the appellants pleaded guilty, but several months before they were brought before the judge for sentencing, the Government agreed to modify the plea-bargaining agreements because of the extraordinary usefulness of the information and testimony the appellants had provided in the United States Attorney's continuing investigation and prosecutions as well as the great personal risk the appellants took in making their revelations.[5] The prosecutor and the defendants entered into agreements under Rule 11(e), Federal Rules of Criminal Procedure, "subject to the approval of the sentencing judge" limiting the defendants' sentences to a maximum of two years' imprisonment for Hamm and a maximum of six months for the other appellants.[6]

3. The original plea-bargaining agreements were in letter form. The text of the agreement with Hamm is as follows:

This letter will acknowledge our agreement regarding the above named client of your firm. In consideration for a full and complete statement from your client, his testimony at trial of the defendants of the above styled and referenced cause, and a plea of guilty to possession of marihuana with intent to distribute, Title 21, United States Code, Section 841(a)(1), the government agrees to dismiss the remaining counts of the indictment and to not prosecute your client for criminal offenses related to the government in his statement which arise from or are a result of his drug related activity.

The government further agrees to take no position upon any request by the defense for leniency regarding the punishment limits imposed by 21 U.S.C. § 841(a)(1) and that the United States Attorney's Office will urge imprisonment in a suitable low security facility, if the Court imposes imprisonment.

It is specifically agreed that the statement of your client will include responses to all questions asked by Drug Enforcement Administration agents and any and all information concerning drug transactions or persons involved, whether solicited or unsolicited.

It is specifically understood that the making of any known false statements or the knowing omission of material facts shall void this agreement.

The text of the agreement with the other defendants, Butler, Evans, Fuller and Washington, is as follows:

This letter will acknowledge our agreement regarding the above referenced client of your firm. In consideration for statements, testimony and a plea of guilty to conspiracy to possess marijuana with intent to distribute, 21 U.S.C. 846, the Government agrees not to prosecute any additional charges arising from the transactions of November 29, 1978 in the Eastern District of Texas or other transactions, divulged during questioning, involving drug transactions.

All parties specifically agree that the statement of the Defendant will include responses to all questions asked by Government agents and any and all information concerning drug transactions or persons involved, whether solicited or unsolicited.

It is specifically understood that the making of any known false statements or the omission of inculpating information shall void this agreement.

It is further agreed that any cooperation received from your client will be noted, in writing, to the United States Probation Department, Eastern District of Texas, prior to the sentencing of your client.

4. Apparently the appellants believed that an agreement would later be negotiated as to sentence or sentence recommendation. The communicatiion breakdown in this case was compounded by the prosecutor's requirement that the appellants keep their agreement to cooperate secret to avoid harm to the appellants and to prevent warning the still unindicted leaders of the conspiracy. Record on Appeal (80–1331), Vol. 4 at 110–11, Vol. 7 at 48–53.

The sequence of events in regard to one defendant, Larry Washington, is set out in a stipulation signed by the Assistant United States Attorney who prosecuted the case. Record on Appeal (80–1331), Vol. 4 at 110–20.

5. Appellants Hamm and Butler were apparently threatened during the trial. The concern for the safety of the appellants was so great that the court installed a metal detector to screen persons entering the courtroom. Record on Appeal (80–1331), Vol. 7 at 20, 23–24.

6. The text of the modified agreement with all of the defendants except Hamm is as follows:

This letter will acknowledge our meeting and agreement of Saturday, June 2, 1979, regarding your client, named above.

In consideration for the continued cooperation of your client and his truthful testimony at trial, the United States agrees to enter into a Rule 11(e) Agreement with your client re-

As we noted in the original panel opinion, "[t]here is considerable evidence in the record to support the appellants' contentions that the prosecutor led them to believe that the judge had agreed to follow the sentencing recommendations." 638 F.2d at 825.[7] The trial judge categorically denied that he was ever informed of the agreement and the prosecutor did not contest that denial in open court. Obviously we accept without reservation the district judge's denial. It thus seems possible that in the prosecutor's zeal to convict the leaders of this conspiracy with the aid of the cooperating defendants, he may have misled at least one of the defense attorneys.[8]

On February 29, 1980, appellant Fuller was brought before the court for sentencing. The trial judge told the prosecutor and the defendant that he had not been informed of the modified plea-bargaining agreement and would not be bound by it.[9] The court then granted Fuller's motion for leave to withdraw his guilty plea. On March 4 and 5, 1980, the Government moved to dismiss the indictments against all of the cooperating defendants under Rule 48(a) of the Federal Rules of Criminal Procedure. The district judge denied the Government's motion, refused to permit the appellants to withdraw their pleas,[10] and

garding punishment, subject to the approval of the sentencing Judge, that your client receive no more than five years, with not more than six months imprisonment, to serve. Further, the United States will extend every effort to insure the imprisonment of your client in a suitable minimum security prison where all necessary security for their personal safety may be assured.

Thank you for your usual professional attention to these matters.

The agreement with Hamm is not in the record. It apparently was identical to the agreement with the other defendants except that it provided for a maximum two years of imprisonment. According to the statement at the time of sentencing and the briefs of the Assistant United States Attorney and the attorneys for the defendants, by referring to "a Rule 11(e) Agreement," the parties intended to enter into the type of agreement authorized by Fed.R.Crim.P. 11(e)(1)(C). Under that rule, the prosecutor agrees to a specific sentence. If the court does not accept that specific sentence, the defendant must be permitted to withdraw his guilty plea. Fed.R.Crim.P. 11(e)(4).

7. The original brief filed by the United States and signed by William C. Bryson, Chief of the Appellate Section of the Criminal Division of the Department of Justice, acknowledged that "counsel for appellants were repeatedly assured by the Assistant United States Attorney that the amended plea agreement had been brought to the attention of the district court, and that the district court had approved the agreement." The record reference cited in support of this statement is to a stipulation signed by the Assistant United States Attorney in which he states that he had told the attorney for Larry Washington several times that the judge had been informed and had agreed to the modified plea-bargaining agreement. Record on Appeal (80–1331), Vol. 4 at 110–20. The stipulation was signed on March 14, 1980, one

week after the prosecutor's motion to dismiss was denied and the defendants were sentenced.

8. In the discussion between the trial judge and the various attorneys at the time of sentencing, only the attorney for Larry Washington mentioned that the prosecutor had told him that the judge had approved the agreement. It does not appear that any similar assurances were given to the attorney for Robert Hamm, and it is unclear whether they were given to the attorneys for the other defendants.

9. It may be that the trial judge indirectly learned about the sentencing agreements when the appellants were cross-examined at the trials of the conspiracy leaders. Defense counsel in those cases questioned the appellants about their agreements with the Government in an effort to impeach their testimony; some of these trials were before the same district judge who sentenced the appellants. See Record on Appeal (80–1331), Vol. 7 at 37–38, 53–54.

10. Since the district judge had granted Fuller's motion to withdraw his guilty plea on February 29, Fuller was not before the court when the others were sentenced on March 7. The district judge ordered Fuller to appear on March 10, however, and at that time the judge, in effect, revoked his permission to withdraw the plea and sentenced Fuller. The judge stated that he was "misled" on February 29 into believing that the sentencing agreement existed prior to the guilty plea and that he subsequently learned that the sentence agreement was not negotiated until after the plea. "So, the Court, having been misled in this regard, we of course, will not permit you to withdraw your plea of 'Guilty.'" Record on Appeal (80–1331), Vol. 8 at 4–7. Nothing in the transcript of February 29 supports the impression that defense counsel intentionally misled the court, however. In fact, Fuller filed a Notice of Plea Agreement with the court on February 29 before the sen-

sentenced them to terms of imprisonment.[11]

## The Meaning of the Leave of Court Requirement

Rule 48(a) of the Federal Rules of Criminal Procedure provides:

Dismissal.

(a) By Attorney for Government. The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

Our determination of the meaning of the "leave of court" requirement is essential to the proper disposition of this appeal. In deciding in what situations that leave can be denied, we must balance the constitutional duty of government prosecutors, as members of the Executive Branch, to "take care that the laws [are] faithfully executed"[12] with the constitutional powers of the federal courts, most particularly the sentencing power of trial judges.[13]

We hold that the "leave of court" requirement of Rule 48(a) is primarily intended to protect the defendant against prosecutorial harassment.[14] The district court may not deny a government motion to dismiss a prosecution, consented to by the defendant, except in those extraordinary cases where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest.[15]

In United States v. Cowan, 524 F.2d 504 (5th Cir. 1975), cert. denied sub nom. Woodruff v. United States, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976), this court interpreted Rule 48(a) to accommodate the powers and duties of the two branches:

We think [Rule 48(a)] should and can be construed to preserve the essential judicial function of protecting the public interest in the evenhanded administration of criminal justice without encroaching on the primary duty of the Executive to take care that the laws are faithfully executed. The resulting balance of power is precisely what the Framers intended.... The Executive remains the abso-

---

tencing proceeding. Attached to that notice was a letter of agreement from the United States Attorney to Fuller's attorney which clearly indicated that the sentencing agreement was negotiated on June 2, 1979, several months after the guilty pleas. Record on Appeal (80–1331), Vol. 3 at 73–74.

On March 24, 1980, the district judge issued a memorandum opinion "to expand and clarify [his] earlier decision" to deny the motion to dismiss and the motions to withdraw the guilty pleas. That opinion is reported at 486 F.Supp. 1285.

**11.** Hamm, Butler, Evans and Washington were each sentenced to two years' imprisonment, three years' special parole and a $5,000 fine. Fuller received two years in prison, but with only six months to be served (the remainder suspended), plus two years' special parole and a $1,000 fine. The modified plea-bargaining agreement envisioned a maximum of six months' imprisonment for all except Hamm, who was to receive a maximum of two years.

**12.** U.S.Const. art. II, § 3.

**13.** In balancing the rights and powers of the Executive Branch with those of the Judiciary, we must keep in mind that the exercise of prosecutorial discretion is to be given great deference by the courts. As Chief Justice (then Circuit Judge) Burger said in Newman v. Unit-

ed States, 382 F.2d 479, 480 (D.C.Cir.1967), "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." The Chief Justice later noted that "[t]he President has abundant supervisory and disciplinary powers—including summary dismissal—to deal with misconduct of his subordinates; it is not the function of the judiciary to review the exercise of executive discretion ...." Id. at 482.

**14.** Rinaldi v. United States, 434 U.S. 22, 29 n.16, 98 S.Ct. 81, 85 n.15, 54 L.Ed.2d 207 (1977); United States v. Cox, 342 F.2d 167, 171 (5th Cir.) (en banc), cert. denied sub nom. Cox v. Hauberg, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); Woodring v. United States, 311 F.2d 417, 424 (8th Cir.), cert. denied, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963).

**15.** Rinaldi v. United States, supra, 434 U.S. at 30, 98 S.Ct. at 85; United States v. Cowan, 524 F.2d 504 (5th Cir. 1975), cert. denied sub nom. Woodruff v. United States, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976); United States v. Ammidown, 497 F.2d 615 (D.C.Cir. 1973).

lute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values.

524 F.2d at 513. Thus, this court limited the discretion of the trial judge to deny leave to dismiss an indictment to cases where dismissal would be "clearly contrary to manifest public interest." [16]

The Supreme Court examined the leave of court requirement in *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). Reversing an en banc decision of this court,[17] the Supreme Court held that if the prosecutor's motion to dismiss was not "tainted with impropriety," and was not "motivated by considerations . . . 'clearly contrary to manifest public interest,'" the trial court could not properly deny the prosecutor's motion. 434 U.S. at 30, 98 S.Ct. at 85–86 (citing *Cowan*). The Court noted that the principal object of the leave of court requirement was apparently to protect a defendant from prosecutorial harassment.[18] The Court did not decide whether a trial court has discretion to deny a prosecutor's motion to dismiss which has the consent of the defendant. 434 U.S. at 29 n.15, 98 S.Ct. at 85 n.15. The Court did not reach that question in *Rinaldi*, however, since even if it assumed that the trial court could deny the prosecutor's motion when it disserved the public interest, the prosecutor's actions in the case could not be fairly characterized as such a disserve. *Id.*

■ We continue to hold that even when the defendant consents to the motion to dismiss, the trial court, in extremely limited circumstances in extraordinary cases, may deny the motion when the prosecutor's actions clearly indicate a "betrayal of the public interest." *United States v. Cowan, supra,* 524 F.2d at 514. As the Supreme Court indicated in *Rinaldi*, the trial judge must look to the motivation of the prosecutor at the time of the decision to dismiss. As Judge Hill pointed out in his dissent to this court's en banc opinion which was re-

**16.** The district judge correctly pointed out in his opinion that the present case can be readily distinguished from *Cowan* where the United States Attorney sought to dismiss the indictment before trial. In this case the prosecutor moved to dismiss the indictment after the defendants had been found guilty. In this regard the district court stated:

The Court, of course, recognizes that the United States attorney is the "best judge of whether a *pending* prosecution should be terminated." . . . Here, however, unlike the situation in *Cowan* where the court needed to appoint a special prosecutor to try the indictment, the Court has already found the defendants guilty of the crime charged in the indictment and the prosecutorial function is only minimally involved in the process of criminal justice. Accordingly, when only sentencing of the defendants remains, it is appropriate for the Court to pay less deference to the decision of the United States Attorney than it normally would.

486 F.Supp. at 1294 (citations omitted). This analysis, however, does not give effect to the holding of the Supreme Court in *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). The Supreme Court, citing *Cowan*, held that the district court could not deny leave to dismiss an indictment unless "the Government's decision to terminate [the] prosecution clearly disserved the public interest." 434 U.S. at 29, 98 S.Ct. at 85. The petitioner in *Rinaldi* had already been tried, convicted and sentenced to imprisonment. It is thus clear that the standard set out in *Cowan* and adopted in *Rinaldi* applies regardless of the stage of prosecution at which the Government moves to dismiss the indictment.

**17.** *In re Washington*, 544 F.2d 203 (5th Cir. 1976).

**18.** The history of Rule 48(a) does not shed any light on the reasons for adding the leave of court requirement. A preliminary draft of the Rule, containing no leave of court requirement, was submitted to the Supreme Court for comment, and the Court questioned whether a prosecutor should be given the unqualified right to dismiss an indictment without leave of court. 6 L. Orfield, Criminal Procedure Under the Federal Rules § 48.17 (1967). The Rule as later submitted to the Supreme Court still did not require leave of court, and the Court modified the Rule adding the requirement without comment. *Id.* at § 48.19.

versed in *Rinaldi,* "if it should appear that the prosecutor is motivated to dismiss because he has accepted a bribe or because he desires to attend a social event instead of attend upon the court in the trial of the case or because he personally dislikes the victim of the crime, the court should withhold leave."[19] *In re Washington,* 544 F.2d 203, 212–13 (5th Cir. 1976) (Hill, J., dissenting). Unless the court finds that the prosecutor is clearly motivated by considerations other than his assessment of the public interest, it must grant the motion to dismiss.

*Application of the Leave of Court Requirement*

In this case, we find no evidence that the prosecutor was motivated by any considerations other than his evaluation of the public interest. The appellants were the principal government informants and witnesses in the prosecutions of the leaders of a large drug-smuggling conspiracy. The service they provided to the Government greatly exceeded that expected, or required, by the initial plea-bargaining agreement. As a result of their cooperation, the lives of at least two of the appellants were threatened and the prosecutor expressed considerable concern for the appellants' safety in prison.[20] The prosecutor also indicated that the continued cooperation of the appellants would be needed in the prosecution of additional leaders of the drug-smuggling conspiracy:

> I would like to call the Court's attention, in addition, that these smuggling cases that are referred to are continuing cases, and as Your Honor was well aware, from sitting through the trial, that there are other Defendants as yet unidentified. Some Defendants, we have some identification on, and it is anticipated that other Indictments will be returned and the cooperation of these witnesses will again be necessary.

Record on Appeal (80–1331), Vol. 7 at 17–18. He later made the same point even more emphatically:

> ur most important consideration, is we must look to other prosecutions down the line, and . . . there are numerous persons that have not been identified . . . that must be . . . convicted and sentenced.
>
> . . . .
>
> And we also feel that is in the interest of the people of the District to get these people, these targets, these kingpins, off of the streets . . . .
>
> . . . .
>
> t is the position of the United States Attorney's Office, particularly me, as the Chief Investigator for this case, that not to grant this dismissal will effectively stop our investigation, and will have the effect of protecting the kingpins involved in marijuana smuggling in this [sic] United States.

*Id.* at 24, 25 & 27.

When it became clear to the United States Attorney that he could not assure the appellants that they would receive favorable sentences, he concluded, after "reevaluat[ing] the magnitude of the information [given by the appellants] and following actions by unknown persons which created concerns for the safety of the witnesses," that the public interest would best be served by dismissing the indictments against the appellants.[21] It must be emphasized that this is not a case in which the prosecutor entered into any agreement with the appellants to dismiss the charges if the judge did not abide by the sentencing agreement or presented the judge with the alternative of either going along with the sentencing agreement or the prosecutor would dismiss the charges. Nothing to that effect has been said or implied. Instead,

---

**19.** Judge Hill's list of examples is merely illustrative of the kinds of betrayal of the public interest which would warrant denial of a motion to dismiss; there certainly may be other situations in which the prosecutor's motion, motivated by considerations other than the interest of the public, should be denied.

**20.** Record on Appeal (80–1331), Vol. 7 at 20, 23–24.

**21.** Memorandum in Support of Government's Motion to Dismiss, p. 2.

this is a case in which the Government, in consideration of the appellants' extraordinary past cooperation, and in order to assure their continued cooperation, to protect their lives and to set a positive example for others who may decide to cooperate, decided that it would best serve the public interest to dismiss the indictments against the appellants.[22] Neither this court on appeal nor the trial court may properly reassess the prosecutor's evaluation of the public interest. As long as it is not apparent that the prosecutor was motivated by considerations clearly contrary to the public interest, his motion must be granted.

In finding that dismissal would not be in the public interest, the district judge stated that "[i]f the public interest would have been served by the dismissal of the indictment against these defendants, the United States Attorney's Office would have moved for dismissal long ago." 486 F.Supp. at 1294. As we point out above, this contention is refuted by *Rinaldi*, in which the prosecutor's motion for dismissal was at an even later stage than in the present case.

■ The trial court also held that the prosecutor did not present sufficient factual information to show that the public interest would be served, and that "nothing more than" information about prior cooperation

would not support a finding that dismissal would be in the public interest. We disagree. The district court appears to have placed the burden on the prosecutor to show that dismissal itself would be in the public interest. The language of this court in *Cowan* and the Supreme Court in *Rinaldi* makes it clear that the motion should be granted unless the trial court has an affirmative reason to believe that the dismissal motion was motivated by considerations contrary to the public interest. As the district judge acknowledged, the prosecutor is the first and presumptively the best judge of where the public interest lies. The trial judge cannot merely substitute his judgment for that of the prosecutor.[23]

We also disagree with the district judge's notion that the public interest can never be served by dismissing an indictment because of the defendants' past cooperation. The decision to dismiss may be the prosecutor's way of letting future conspiracy defendants know of the possible advantages of cooperation with the Government. It may very well be crucial to the prosecutor's credibility in future cases involving informants or defendants who testify in return for lenient treatment. Moreover, as we have explained above, the prosecutor was motivated not only by a desire to reward past cooperation but also by the need to assure

22. The trial judge noted that the prosecutor felt an obligation to assist the appellants in light of their cooperation:

[The Assistant United States Attorney] has worked hard on the smuggling cases, and he has prosecuted them well, and we feel and we think he feels an obligation to the Defendants who made good in giving their testimony, and he feels that he should make a stand in their behalf in regard to the recommendations.

Record on Appeal (80–1315), Vol. 4 at 12. The judge later complimented the prosecutor on his integrity and candor in revealing the details and timing of the modified plea-bargaining agreement:

The Court is pleased that the evidence took this turn, Mr. Baugh, because it causes the Court to have more confidence in your integrity as a prosecutor, and I think it is commendable that you have stated what you have.

*Id.* at 65–66.

23. The district judge cites *United States v. Ammidown*, 497 F.2d 615 (D.C.Cir.1973) for the proposition that the prosecutor must present information in support of its motion to dismiss. Although we agree with the District of Columbia Circuit that the prosecutor usually should supply more than "a mere conclusory interest," we find that sufficient reasons were given by the prosecutor in the present case. If *Ammidown* is read to place the burden on the prosecutor to prove that dismissal is in the public interest, however, then it is contrary to our rule enunciated in *Cowan* and to the Supreme Court's holding in *Rinaldi*.

It is perhaps significant that preliminary drafts of Rule 48(a) included a requirement that the prosecutor provide a statement of his reasons for seeking dismissal. This requirement was sharply criticized by several prosecutors and judges and was deleted by the Supreme Court. *See* 6 Orfield, *supra*, at §§ 48.18–.19.

the appellants' future cooperation and to protect their lives.[24]

■ Since we decide that the trial court should have granted the prosecutor's motion to dismiss the indictments, we do not reach the issue of whether he should have permitted the appellants to withdraw their guilty pleas after he informed them that he would not be bound by the modified plea-bargaining agreement. With the notable exception of cases where the prosecutor and the defendant enter into the kind of agreement authorized by Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, motions to withdraw guilty pleas are generally within the discretion of the trial judge. *United States v. Morrow*, 537 F.2d 120, 146 (5th Cir. 1976), *cert. denied sub nom. Brennan v. United States*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). However, leave to withdraw a guilty plea should be freely granted if there appears to be a reason to justify withdrawal. *United States v. Pressley*, 602 F.2d 709, 711 (5th Cir. 1979). To determine whether the trial court should have granted the motion to withdraw we would thus have to first decide whether the modified plea-bargaining agreement was a Rule 11(e)(1)(C) agreement, and, if it was not, then decide whether the court abused its discretion in denying the motion. That complex inquiry would be of no practical value in this case. The Government, through the local United States Attorney and through the Chief of the Appellate Section of the Criminal Division of the Department of Justice, indicated at oral argument and in its briefs that if the appellants were permitted to withdraw their guilty pleas the Government would not proceed with the prosecution. Thus there is no point in remanding these cases to the trial judge with instructions to let the defendants withdraw their guilty pleas. As Judge Weinfeld has noted, the trial court cannot compel the prosecutor to proceed with the prosecution; after the charges lie dormant for a while, the defendant would have a right to dismissal under Rule 48(b), which provides for dismissal "if there is unnecessary delay in bringing a defendant to trial." *United States v. Greater Blouse, Skirt & Neckwear Contractors Association*, 228 F.Supp. 483, 489–90 (S.D.N.Y.1964). Under the circumstances, direct dismissal of the indictments is proper. Otherwise we would be using a roundabout method to accomplish what we now accomplish more simply: dismissal of the indictment.[25]

*Conclusion*

■ In light of the representations made by the Government in support of its motion

24. We do not condone any misrepresentations made by the prosecutor to the attorney for Washington or any of the other attorneys in regard to whether the judge had been informed of or had agreed to the modified plea agreement. However, we do not believe that those actions reflect upon the motivation of the United States in seeking dismissal. In *Rinaldi*, the Court of Appeals held that "the prosecutor's bad faith justified the District Court's refusal to set aside [the] defendant's conviction." 434 U.S. at 26, 98 S.Ct. at 83. The "bad faith" in that case was a misrepresentation by the prosecutor during the trial that he had been instructed by the Justice Department to maintain the prosecution even though the defendant had already been convicted in state court. The Supreme Court, in reversing the Court of Appeals, noted that "[t]he salient issue, however, is not whether the decision to maintain the federal prosecution was made in bad faith but rather whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety." 434 U.S. at 30, 98 S.Ct. at 85. Here, too, we must look at the Government's efforts to terminate the prosecution, and we find those efforts untainted with impropriety. In its briefs before the original panel of this court, the Justice Department acknowledged that the Assistant United States Attorney may have misled the defense attorneys. (Of course, there is no allegation that the prosecutor in any manner attempted to mislead the court.) The Justice Department nevertheless concluded that dismissal of the indictments was in the public interest.

25. A committee of Beaumont and Port Arthur, Texas, attorneys, as amicus curiae, argue that the Supreme Court's holding in *Rinaldi* should be limited to situations where the Justice Department's *Petite* policy or another long-standing policy is the motivation for the motion to dismiss. Nothing in the Supreme Court's opinion supports the notion that its holding is so limited. In discussing the application of the *Petite* policy to the case, the Court was merely determining whether the prosecutor's actions were contrary to the public interest.

to dismiss, we cannot agree with the district judge that the motion to dismiss the indictments was motivated by considerations clearly contrary to the manifest public interest. As *Cowan* and *Rinaldi* point out, and as the district judge acknowledged, the determination of the public interest in the first instance is for the prosecutor to make. We are not in a position to second-guess his determination, and even if we were, under the facts of this case we could not say that the prosecutor mistakenly gauged the public interest when he decided that the past and future cooperation of the appellants warranted dismissal of the indictments against them. We therefore reverse, and remand with directions to sustain the Government's motion to dismiss the indictments against all of the appellants.[26]

REVERSED AND REMANDED.

GEE, Circuit Judge, concurring:

I concur in the court's opinion, adding only a few words. Careful study of the record reveals, unmistakably, in my view, that the prosecutor twice represented to counsel for at least one of these defendants that he had secured the court's approval of a specific sentence when he had yet to do so. By that representation he secured the benefit of favorable testimony against highly-placed criminals in a massive drug conspiracy, testimony the giving of which placed the witness in great danger. What led him to do this is unclear—perhaps mere over-zealousness, perhaps a belief that he could redeem his promises by later persuading the court to act in accordance with them, combined with a reluctance to disclose them too early in view of his expressed fear of a "security leak" among his subordinates or those of the court. In any event, the action does him little credit.

Having done so, however, and being unable to persuade the court to his concept of a proper sentence, he attempted to make his word good by the only avenues then available to him: motions to dismiss and for new trial. I do not think that these actions, given the circumstances, can be said to have been against the public interest. That his initial overreaching was wrong is undeniable; but having reaped its fruits of favorable testimony given and more promised, and reaped them moreover at the price of increased danger to one who took his word, it seems to me that his action was the honorable course. Since it was, I cannot say nor do I think it fairly can be said that it was against the public interest.

Respect is due the court's sentencing function as well as the prosecutor's enforcement one, however. It would be intolerable to grant the prosecutor practical power to bargain away the court's discretion in advance; and I recognize that the effect of our decision comes perilously close to doing so, the more because of the very broad dismissal power that we recognize today in the prosecutor. I therefore add that had the agreement taken the form of one made in advance to dismiss the prosecution if the judge failed to follow the prosecutor's recommendation, I assume that its disclosure before the giving of a guilty plea, as required by Rule 11, would have caused that plea's rejection and its subsequent emergence would have been grounds to reject a motion to dismiss as against the public interest.[1] It is in that interest that sentenc-

---

**26.** Counsel for appellant Fuller brought to the attention of the original panel of this court that Fuller was killed in an airplane accident subsequent to the filing of the notice of appeal in this case. We have since been informed by the Government that appellant Butler has died of gunshot wounds. When a criminal appellant dies after filing a notice of appeal of his conviction, the long-standing rule of this court is that the indictment be dismissed. *United States v. Jones*, 498 F.2d 673 (5th Cir. 1974); *Daniel v. United States*, 268 F.2d 849 (5th Cir. 1959). Therefore, even if we had not ordered the dis-

trict court to dismiss the indictment as to the other appellants, we would have to do so as to Fuller and Butler. Any fine paid by Fuller, Butler, or any of the other appellants must, of course, be returned.

**1.** [W]hen the conduct of an officer of the executive branch becomes enmeshed in the judicial process, the courts have the power and resulting duty to supervise that conduct to the extent its uses the judicial administration of criminal justice. The courts can no more be made the tools of improper administrative

ing discretion remain in the court, and any calculated or premeditated effort by the prosecutor to usurp it must be brought to nothing. Since I see neither evidence nor finding of such an effort here, however, I concur.

REAVLEY, Circuit Judge, with whom GARZA, POLITZ and SAM D. JOHNSON, Circuit Judges, join, dissenting:

The disposition of the case at this juncture should depend upon whether the position of the United States Attorney and the Department of Justice on the dismissal of these indictments has changed since first presented to the district court. At that point the motions for dismissal were clearly what the district judge said they were: "a camouflaged attempt to limit the 'sentencing authority reserved to the judge.'" *United States v. Butler*, 486 F.Supp. 1285, 1294–95 (E.D.Tex.1980). The Government had *not* decided that the prosecutions should be terminated; the decision was that certain sentences should be assessed and that, if the court disagreed, it would be necessary—because of promises made to the defendants—to dismiss rather than to allow the court to give the harsher sentences. The trial court denied the motions under those circumstances—and properly so, in my opinion.

---

conduct than they may "become the 'enforcers' of . . . odious agreements."
*United States v. Paiva*, 294 F.Supp. 742, 746 (D.D.C.1969) quoting *Dixon v. District of Columbia*, 394 F.2d 966, 969 (D.C.Cir.1968).

1. The majority classify the agreements that were concluded between Baugh and defendants Butler, Fuller, Evans, Hamm, and Washington subsequent to each defendant pleading guilty as "agreements under Rule 11(e)." 659 F.2d at 626. The district judge held that a plea agreement between a United States Attorney and a defendant subsequent to a plea of guilty "is not a valid Rule 11(e) plea agreement." *United States v. Butler*, 486 F.Supp. 1285, 1295 (E.D. Tex.1980). I agree with the district judge.

2. Baugh signed a stipulation under oath that he told Washington's attorney that the district judge had approved their agreement and that the six months jail time was secure. Record on Appeal (80–1331), Vol. 4 at 117–19. An offer of proof signed by counsel for defendants Butler and Evans incorporated the stipulation

---

The majority hold otherwise. In the course of that holding, they have not read the record as I read it, or as the trial judge saw it. But the majority state another ground for their judgment: they say that the decision of the Government *at the time of the appeal* is that the prosecutions should be terminated whatever sentences would otherwise be assessed, and, if the defendants were permitted to withdraw their guilty pleas, the Government would move to dismiss and not proceed with the prosecution. 659 F.2d at 626–627. If that is now the decision of the Government, I would join in the dismissal. The Government has not said this in its briefs, however, and "indications" at oral argument are not quite enough for me. It would seem that this simple question could be resolved and, possibly, needless writing and ruling avoided, but that has been denied us. I therefore return to the ruling of the trial judge on the facts that were presented to him.

### Facts Before the District Court

The agreements that Mr. Baugh, the Assistant United States Attorney, had with the defendants were for a certain sentence.[1] At least three defendants, Washington, Butler, and Evans were told and retold, falsely,[2] that the district judge had agreed

---

as reflecting the sequence of events and details of negotiations had relative to the defendants [Butler and Evans] with the observation that the only substantial differences between such stipulation and what the defendants will prove is that the conversations had relative to the defendants occurred with the defendants and/or their counsel, not with Larry Washington and/or his counsel, and that the dates recited in the stipulation are accurate within seven days relative to the defendants.
Record on Appeal (80–1331), Vol. 1 at 98; *id.*, Vol. 2 at 78. The district judge stated that he learned of this agreement on February 29, 1980 for the first time and had never agreed to it. 486 F.Supp. at 1292. How, then, does this court solemnly write: "It thus seems possible that in the prosecutor's zeal .... he may have misled at least one of the defense attorneys"? 659 F.2d at 627. It does not "seem possible" that an attorney "may have [been] misled." Baugh perpetrated an outright falsehood and he did so more than once.

to that certain sentence. All defendants apparently were assured "that action had been taken to bind the sentencing judge to honor the agreement[s]."[3] Baugh added that if the sentencing judge refused to honor the agreements, the Government would dismiss the indictments.[4]

The Government made no motion, and indicated no wish, to dismiss these indictments until February 29, 1980, when the district judge indicated that he would not follow Baugh's sentencing recommendations. The factors that the majority give to justify the Government's dismissal—past and future cooperation by these appellants—were actually the reasons why the prosecutor thought the sentences should be lower than the district judge thought they should be. During February of 1980, when all of these factors were well known to Baugh, he was still firm on those sentences when talking to defense counsel. The motion to dismiss came only when the district judge said that he would do the sentencing and would not follow Baugh's recommendations. Baugh then promptly filed motions to dismiss the indictments. In the motion

to dismiss the indictment against defendants Butler, Evans, Fuller, and Washington, Baugh argued "[t]hat the Court has indicated its refusal to follow the recommendation of the United States Attorney's Office."[5] In support of the Government's motion to dismiss the indictment against defendant Hamm, Baugh argued that the "Court ... indicated ... a reluctance to honor and abide by the recommendation of the Assistant U.S. Attorney."[6]

There was the question before the district judge, plain and simple: After a plea of guilty has been received—no promises having been made to the defendant upon the sentence at the time the district judge accepted the plea—may the Government dismiss an indictment *because* the judge will not "honor and abide" by the recommended sentence of the Assistant United States Attorney?

### *Federal Rule of Criminal Procedure 48(a)*[7]

When the United States Attorney moves to dismiss an indictment against a defend-

---

**3.** Record on Appeal (80–1315), Vol. 1 at 141 (affidavit of counsel for defendant Butler); Record on Appeal (80–1331), Vol. 1 at 144 (same); *id.*, Vol. 2 at 123 (same); *id.*, Vol. 3 at 140 (same); *id.*, Vol. 4 at 168 (same).

Unlike defendants Butler, Evans, and Washington, who were told that the district judge had consented to a certain sentence, *see* note 2, *supra*, the record is unclear whether defendants Hamm and Fuller were told by Baugh that the district judge had agreed to a specific sentence. At most, the record shows that defendant Hamm understood that the United States Attorney's Office had the authority to agree to specific sentences subsequent to the entry of a guilty plea. *See* Record on Appeal (80–1315), Vol. 4 at 35–38. Defendant Fuller was led to believe that the district judge "would approve the Plea Agreement." *See* Record on Appeal (80–1331), Vol. 3 at 87–88.

**4.** The majority "emphasize[ ]" that the prosecutor did not enter into "any agreement with the appellants to dismiss the charges if the judge did not abide by the sentencing agreement." 659 F.2d at 630. To the contrary, that is exactly what the prosecutor did.

In a stipulation signed under oath, Baugh stated that if the court refused to follow the plea agreement between the Government and defendant Washington, Washington should move to withdraw his plea and "Baugh would dis-

miss the case and would not reprosecute" Washington. Record on Appeal (80–1331), Vol. 4 at 119. According to their counsel, Baugh made this same agreement with defendants Butler and Evans. Record on Appeal (80–1331), Vol. 1 at 98; *id.*, Vol. 2 at 78. An affidavit signed by counsel for defendant Butler states that "if the sentencing judge refused to honor the agreement Mr. Butler would be entitled to withdraw his plea of guilty, and upon withdrawing the plea of guilty, the Government could and would move to dismiss the indictment pending against Mr. Butler." Record on Appeal (80–1331), Vol. 1 at 145. As this affidavit was included as part of the record in the appeal of each of the defendants, Record on Appeal (80–1315), Vol. 1 at 142; Record on Appeal (80–1331), Vol. 1 at 145; *id.*, Vol. 2 at 124; *id.*, Vol. 3 at 141; *id.*, Vol. 4 at 169, a similar agreement to dismiss may have existed for defendants Fuller and Hamm as well.

**5.** Record on Appeal (80–1331), Vol. 1 at 79; *id.*, Vol. 2 at 58; *id.*, Vol. 3 at 75; *id.*, Vol. 4 at 85.

**6.** Record on Appeal (80–1315), Vol. 1 at 93.

**7.** Rule 48(a) of the Federal Rules of Criminal Procedure provides:

The Attorney General or the United States attorney may by leave of court file a dismiss-

ant, Rule 48(a) of the Federal Rules of Criminal Procedure requires the prosecutor to obtain "leave of court." Fed.R.Crim.P. 48(a). The original intent of the draftsmen in including the "leave of court" requirement has been lost.[8] The judicial gloss that covers the phrase, however, is clear: the district judge may deny the Government's motion to dismiss if the prosecutor is motivated by considerations that are clearly contrary to the public interest.

We first set out this interpretation in *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). In *Cowan*, we recognized that Rule 48(a) contemplated maintaining the delicate balance of power between the Judiciary and the Executive. The Executive was "to take care that the laws are faithfully executed." 524 F.2d at 513. The Judiciary was to "protect[ ] the public interest in the even-handed administration of criminal justice." *Id.* at 512. Thus, while we acknowledged that the "Executive . . . [was] the best judge of whether a . . . prosecution should be terminated," the Judiciary could deny leave if the dismissal were "clearly contrary to manifest public interest." *Id.* at 513.

We reaffirmed our construction of the leave of court requirement in Rule 48(a) one year later. *See In re Washington*, 544 F.2d 203, 208–09 (5th Cir. 1976) (en banc), *rev'd on other grounds sub nom. Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). Other United States courts have also interpreted Rule 48(a) to allow the judge to deny leave if the motion to dismiss is not in the public interest. *See, e. g., United States v. Ammidown*, 497 F.2d 615, 622 (D.C.Cir.1973) ("authority has been granted to the judge to assure protection of the public interest"); *United States v. Hastings*, 447 F.Supp. 534, 537 (E.D.Ark.1977) ("dismissal is warranted if the Court is sat-

isfied that the reasons advanced for dismissal . . . are compatible with the public interest"); *United States v. N.V. Nederlandsche Combinatie Voor Chemische Industrie*, 75 F.R.D. 473, 474 (S.D.N.Y.1977) ("clearly contrary to manifest public interest"); *United States v. Biddings*, 416 F.Supp. 673, 675 (N.D.Ill.1976) ("manifest public interest"); *United States v. Greater Blouse, Skirt & Neckwear Contractors Assoc.*, 228 F.Supp. 483, 486 (S.D.N.Y.1964) ("public interest"); *United States v. Shanahan*, 168 F.Supp. 225, 227 (S.D.Ind.1958). *See also Rinaldi v. United States*, 434 U.S. 22, 29 n.15, 98 S.Ct. 81, 85 n.15, 54 L.Ed.2d 207 (1977) ("the Rule has also been held to permit the court to deny a Government dismissal motion . . . if the motion is prompted by considerations clearly contrary to the public interest"). *See generally* Annot., When Is Federal Court Justified, Under Rule 48(a) of the Federal Rules of Criminal Procedure, in Denying Government Leave to Dismiss Criminal Charges, 48 A.L.R.Fed. 635, 642–43 (1980).

The Supreme Court of the United States applied the "leave of court" requirement of Rule 48(a) in *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). In *Rinaldi* the Government had moved in the district court to dismiss an indictment against a defendant who had been convicted and sentenced for a hotel robbery in both the Florida and the United States courts. The Government argued that its *Petite* policy,[9] which protects a defendant from successive prosecutions in state and federal courts unless authorized by an Assistant Attorney General, had been violated. Both the district court and we denied relief on the ground that the Government had acted in bad faith and contrary to the public interest by previously representing to the district judge that the federal prosecution had been authorized. *See id.*, 434 U.S. at 23–26, 98 S.Ct. at 82–83.

al of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.
Fed.R.Crim.P. 48(a).

8. *See Rinaldi v. United States*, 434 U.S. 22, 29 n.15, 98 S.Ct. 81, 85 n.15, 54 L.Ed.2d 207 (1977).

9. See notes 12–13 and accompanying text, *infra*, for a discussion of the *Petite* policy.

On appeal, the Supreme Court reversed. According to the Court,

> [t]he ... issue, however, [was] not whether the decision to maintain the federal prosecution was made in bad faith but rather whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety.

*Id.*, 434 U.S. at 30, 98 S.Ct. at 85. After an examination of the record, the Court concluded that "[t]he decision to terminate this prosecution, based as it was on the *Petite* policy, was motivated by considerations which cannot fairly be characterized as 'clearly contrary to manifest public interest.' " *Id.* (quoting *United States v. Cowan*, 524 F.2d at 513).

### The District Judge's Finding and Conclusion

In *Cowan* we held that our review of a district judge's conclusion that the dismissal of an indictment is contrary to the public interest was subject to "a closer scrutiny than in the ordinary case." 524 F.2d at 513. Thus, "[i]f upon appraisal of all the relevant factors, [we have] a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached, the judgment must be reversed." *Id.* We also have held that the clearly erroneous standard governs our review of a district judge's findings of fact on a defendant's motion to dismiss an indictment,[10] e. g., *United States v. Bright*, 630 F.2d 804, 811 (5th Cir. 1980); *United States v. Luttrell*, 609 F.2d 1190, 1192 (5th Cir. 1980); *United States v. Cathey*, 591 F.2d 268, 272 (5th Cir. 1979), and in other collateral criminal proceedings, *see, e. g., United States v. Smith*, 649 F.2d 305, 309 (5th Cir. 1981) (motion to suppress contraband seized during search); *United States v. Quigley*, 631 F.2d 415, 416 (5th Cir. 1980) (finding of fact that prior plea bargain did not preclude later criminal proceeding by Government). The district judge's finding that the purpose behind the Government's motion to dismiss was to limit his sentencing authori-

ty is, therefore, tested under the clearly erroneous rule. His conclusion that the Government's purpose was clearly contrary to the public interest is accorded "a closer scrutiny." *United States v. Cowan*, 524 F.2d at 513.

The district judge expressly found that the Government's motion to dismiss the indictments was "nothing more than a camouflaged attempt to limit the 'sentencing authority reserved to the judge.' " 486 F.Supp. at 1294-95. His finding is fully supported by the record. That the Assistant United States Attorney, Baugh, moved to dismiss because he disagreed with the sentences that he anticipated that the district judge would dispense is clearly demonstrated in both of the motions he filed. In support of the Government's motion to dismiss the indictment against defendants Butler, Evans, Fuller, and Washington, Baugh argued

> [t]hat the Court has indicated its refusal to follow the recommendation of the United States Attorney's Office at the proposed sentencing of LESTER WALLICK FULLER and CHARLES TALKINGTON.

Record on Appeal (80–1331), Vol. 1 at 79; *id.*, Vol. 2 at 58; *id.*, Vol. 3 at 75; *id.*, Vol. 4 at 85. Similar language was included in his motion to dismiss the indictment against defendant Hamm.

> That this Court has indicated, at the sentencing of the Defendant, LESTER WALLICK FULLER, a reluctance to honor and abide by the recommendation of the Assistant U.S. Attorney.

Record on Appeal (80–1315), Vol. 1 at 93. In arguing these motions to the district judge, Baugh suggested that the sentence to be assessed by the court was a factor that he considered important to his effort to induce others to enter into plea agreements with the United States Attorney's Office. Record on Appeal (80–1331), Vol. 7 at 21. Moreover, in an affidavit filed subsequent to the oral hearing

---

**10.** Federal Rule of Criminal Procedure 12(b)(2) provides a mechanism for a defendant to seek

dismissal of an indictment.

Mr. Baugh agreed and stated that if the Court refused to follow the plea bargain agreement [for a six month sentence], that the defendant [Washington] should move to withdraw the plea. Mr. Baugh said that if the Court permitted the defendant to withdraw the plea, Mr. Baugh would dismiss the case and would not reprosecute the defendant.

Record on Appeal (80–1331), Vol. 4 at 119. In another affidavit, counsel for defendant Butler said that he

discussed with Mr. Baugh what action could be taken to insure that the agreement would be kept and we agreed that if the sentencing judge refused to honor the agreement Mr. Butler would be entitled to withdraw his plea of guilty, and that upon withdrawing the plea of guilty, the Government could and would move to dismiss the indictment pending against Mr. Butler.

Record on Appeal (80–1315), Vol. 1 at 142; Record on Appeal (80–1331), Vol. 1 at 145; id., Vol. 2 at 124; id., Vol. 3 at 141; id., Vol. 4 at 169. On this record, the district judge was surely justified in finding that the motivation behind the Government's motion to dismiss was to rob him of his authority to sentence the defendants.[11]

Once the district judge found that the motivation behind the Government's motions to dismiss was to deprive him of his sentencing authority, he properly could deny the motions because the Government's actions were clearly contrary to manifest public interest. In the United States courts, the determination of the length of a defendant's sentence is a function reserved to the district judge. We expressly recognized this precept in *United States v. Bean*, 564 F.2d 700 (5th Cir. 1977), when, in discussing a district judge's refusal to accept a plea agreement that provided for the dismissal of the more severe of the two counts alleged in the indictment, we said that "the length of the sentence has almost always been a matter within the discretion of the

district court." *Id.* at 704; *see also United States v. Adams*, 634 F.2d 830, 835 (5th Cir. 1981) (district judge did not abuse her discretion in rejecting plea agreement when she believed that defendant would receive too light a sentence).

On other occasions in considering different circumstances, this and other United States courts have consistently reaffirmed that the authority to sentence a defendant is committed solely to the district judge. *See, e. g., United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970) ("It is the function of the judge to impose sentence."), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 60 (1970); *United States v. Del Toro*, 513 F.2d 656, 666 (2d Cir. 1975) ("It is commonplace that punishment is for the court . . . ."), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *Walters v. Harris*, 460 F.2d 988, 991–92 (4th Cir. 1972) ("Sentencing . . . was within the authority of no one but the trial judge."), *cert. denied*, 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973); *United States v. Coke*, 404 F.2d 836, 845 (2d Cir. 1968) (en banc) ("sentencing is normally within the discretion of the trial judge"); *Owens v. United States*, 383 F.Supp. 780, 784 (M.D.Pa.1974) ("The long-established authority in the United States is that the sentencing function is vested exclusively in the trial court."), *aff'd*, 515 F.2d 507 (3d Cir. 1975) (table), *cert. denied*, 423 U.S. 996, 96 S.Ct. 425, 46 L.Ed.2d 371 (1975). It follows that at sentencing the role of the prosecutor, the United States Attorney, is limited to making a recommendation—a recommendation that is not binding on the judge. "[T]he trial court is not to be bound by any pre-trial representations made by a prosecuting officer with respect to . . . possible sentences." *Clemons v. United States*, 137 F.2d 302, 305 (4th Cir. 1943).

Therefore, a motion by the Government to dismiss an indictment that is inspired by the district judge's refusal to assess the sentence recommended by the United

---

11. The majority report that they "find no evidence that the prosecutor was motivated by any consideration other than his evaluation of the public interest." 659 F.2d at 630. I find that the prosecutor took no thought of a "public interest" question until his plans for sentences had been blocked and he had to argue motions to dismiss.

States Attorney's Office may be denied to "protect[ ] . . . the sentencing authority reserved to the judge.". *United States v. Ammidown*, 497 F.2d 615, 622 (D.C.Cir.1973).

### *Another* Rinaldi?

The majority erect the Supreme Court's decision in *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977), as an insuperable barrier. 659 F.2d at 629–630. Yet, the considerations before the Supreme Court of the United States in *Rinaldi* were vastly different from those facing the district judge in the instant case. In *Rinaldi*, the Government sought to implement its *Petite* policy. The *Petite* policy, as promulgated by the Department of Justice, "precludes the initiation or continuation of a federal prosecution following a state prosecution based on substantially the same act or acts unless there is a compelling federal interest supporting the dual prosecution." United States Attorney's Manual § 9–2.142 (1980), *reprinted in* Annot., 51 A.L.R.Fed. 852, 853–54 (1981).[12] Although the Supreme Court has not found that this policy is constitutionally compelled,[13] it "is much more than a departmental policy in the usual sense." *United States v. Thompson*, 579 F.2d 1184, 1190 (10th Cir. 1978) (en banc) (Seth, C. J., dissenting), *cert. denied*, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978). Through its effective implementation, the policy shields the citizen from successive state and federal prosecutions for the same act, which, but for the concept of dual sovereignty inherent in our federal system, ordinarily would be encompassed by the double jeopardy clause of the Fifth Amendment. Indeed, as the Supreme Court recognized in *Rinaldi*, "the [*Petite*] policy represents the Government's response to repeated expressions of concern by Members of this Court," 434 U.S. at 27, 98 S.Ct. at 85, and "the federal courts should be receptive, not circumspect, when the Government seeks leave to implement that policy," *id.* at 29, 98 S.Ct. at 85.

Moreover, unlike the facts in *Rinaldi*, in which "[t]he decision to terminate th[e] prosecution . . . was motivated by considerations which cannot fairly be characterized as 'clearly contrary to the manifest public interest,'" *id.* at 30, 98 S.Ct. at 85, the decision to dismiss the indictments in this case was, as the cold record unmistakably reveals, based on the district judge's refusal to follow the sentencing recommendations of the prosecutor. A dismissal based on the prosecutor's disagreement with the district judge over the length of the sentence to be imposed can *never* be in the public interest. *United States v. Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1973).

### *Federal Rule of Criminal Procedure 32(d)*

The mandatory requirement under Rule 11(e)(4) of the Federal Rules of Criminal Procedure that the defendants be afforded an opportunity to withdraw their guilty pleas is inapplicable, because these defendants pleaded guilty without any agreement upon a specific sentence.[14] Nevertheless, the district judge should have allowed defendants Butler, Evans, and Washington to withdraw their pleas of guilty. Moreover, the record indicates the likelihood that the

---

**12.** For a brief history of the *Petite* policy see Annot., Effect on Federal Criminal Prosecution or Conviction of Prosecutor's Noncompliance with Petite Policy Requiring Prior Authorization of Attorney General for Federal Trial Where Accused Has Been Previously Prosecuted for Same Acts in State Court, 51 A.L.R. Fed. 852, 853–58 (1981).

**13.** Under current Supreme Court jurisprudence, the concept of dual sovereignty allows a state to prosecute an individual for a crime for which he already has stood trial in federal court, *see Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and the United States to prosecute an individual for a crime for which he already has stood trial in a state court, *see Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1950). *See generally* Note, The Problem of Double Jeopardy in Successive Federal-State Prosecutions: A Fifth Amendment Solution, 31 Stan.L.Rev. 477, 477–496 (1979); Note, The Continued Validity of Successive Prosecutions by State and Federal Governments for the Same Criminal Conduct, 44 Wake Forest L.Rev. 823 (1978); Annot., Acquittal or Conviction in State Court as Bar to Federal Prosecution Based on Same Act or Transaction, 18 A.L.R.Fed. 393 (1974).

**14.** *See* note 1, *supra*.

district judge abused his discretion in denying the motions of the other defendants to withdraw their guilty pleas.

Rule 32(d) of the Federal Rules of Criminal Procedure provides:

A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Fed.R.Crim.P. 32(d). This court construed Rule 32(d) in *United States v. Presley*, 478 F.2d 163 (5th Cir. 1973). There we stated:

This rule does not confer an absolute right to withdraw a plea of guilty or *nolo contendere* before the imposition of sentence, but leaves to the sound discretion of the trial judge the decision whether a defendant has met his burden of showing adequate cause for permitting withdrawal of the plea .... We have adhered nonetheless to the general principle that Rule 32(d) should be construed liberally in favor of the accused when a motion is made to withdraw before sentence is imposed. The right of jury trial is involved and that right has long held a favored place in our law.

*Id.* at 166–67 (citations omitted).

Because of the agreement with the Government on a certain sentence, and the false assurance by the Government that the district judge had been informed and had consented,[15] defendants Butler, Evans, and Washington cooperated in an important trial at their peril. They should not be treated now as if there had been no misconduct by the Government. They were entitled to rely upon the statements of fact made by the Government. Having done so at a substantial price to themselves, the district judge should have elected to treat them in the same manner as if their sentence had

been incorporated in the original plea agreement. Butler, Evans, and Washington should have been permitted to withdraw their pleas of guilty when the district judge indicated his refusal to assess the sentences they understood that they would receive. The district judge abused his discretion by not allowing them to do so.

Unlike defendants Butler, Evans, and Washington, the record does not clearly demonstrate that defendants Fuller and Hamm understood that the district judge had consented to the sentences recommended by the Government. The record does show, however, that the Government had assured these defendants that either they would enjoy those sentences or the Government would dismiss the indictments against them.[16] Moreover, each of these defendants apparently was under the impression that the Government had taken steps that would "bind the sentencing judge to honor the agreements." Like Butler, Evans, and Washington, these defendants also had cooperated with the Government in an important trial and were entitled to rely on the statements of the Government. They, too, did so at a substantial price to themselves. Because it is unclear whether the district judge considered our interpretation of Rule 32(d) in denying the motions of these defendants to withdraw their guilty pleas, I would remand for further consideration by the district judge.

Therefore, I would hold that it was an abuse of discretion to deny the motions of defendants Butler, Evans, and Washington to withdraw their guilty pleas. I would also remand to the district court to reconsider the other motions to withdraw guilty pleas.[17]

### Conclusion

Unlike us, the district judge was there. From his unique perspective he found that

---

15. *See* notes 2 & 3, *supra*.

16. *See* note 3, *supra*.

17. I, of course, agree with the majority that because defendants Butler and Fuller have died prior to our resolution of their appeals, their convictions must be vacated. 659 F.2d 633 n. 26.

the purpose behind the Government's motions to dismiss the indictments was to interfere with his sentencing authority. He concluded that this was contrary to the public interest. Both the record [18] and the law support his holdings. I would vacate the convictions of the defendants. I would remand to the district court with instructions to grant the motions of defendants Evans and Washington to withdraw their guilty pleas and to reconsider the motion of defendant Hamm to withdraw his plea in light of our decision in *United States v. Presley.*

**18.** The liberties enjoyed by the majority in their interpretation of the record in these appeals are disturbing.

There is no reason for the majority to intimate "that the trial judge indirectly learned about the sentencing agreements when the appellants were cross-examined at the trials of the conspiracy leaders." 659 F.2d at 627 n. 9. In his opinion, Judge Fisher stated that "up until the sentencing of Fuller ..., the Court was unaware of any agreement to limit a maximum sentence to six months." 486 F.Supp. at 1292. The word of a United States district judge is good enough for me. I would think that it would be good enough for the majority.

Nor is there any justification for this court to question Judge Fisher's statement "that he was 'misled' on February 29 into believing that [defendant Fuller's] sentencing agreement existed prior to the guilty plea and that he subsequently learned that the sentence agreement was not negotiated until after the plea." 659 F.2d at 627 n. 10. The majority's hollow explanation for their conclusion is that "[n]othing in the transcript of February 29 supports the impression that defense counsel intentionally misled the court, ... [and that] Fuller filed a Notice of Plea Agreement with the court on February 29 before the sentencing proceeding." *Id.*

Judge Fisher neither said nor suggested that any of defense counsel *intentionally* misled him. What he did say, as explained in his opinion, was that

[i]n chambers prior to the sentencing, the Court understood counsel for defendant Fuller to represent that at the time defendant Fuller pleaded guilty, the underlying plea agreement had contained a provision whereby the United States Attorney's Office would recommend a sentence which would include no more than six months incarceration.

486 F.Supp. at 1291 (emphasis added).

The transcript of Fuller's subsequent sentencing hearing provides no clarification on this question. Rather, it seems to reflect an attempt to further Judge Fisher's belief that the sentencing agreement existed at the time Fuller entered his guilty plea. When Judge Fisher

asked the prosecutor whether the agreement for a maximum sentence was brought to his attention at the time defendant Fuller entered his plea, the prosecutor's response was that there was an agreement to recommend only six months imprisonment, but that he was unsure whether it had been brought to the court's attention then.

THE COURT: Whatever the agreement was, the Court will inquire, was it brought to the Court's attention at the time that the Defendant entered a plea of "Guilty"?

MR. BAUGH: I don't recollect exactly, Your Honor, I believe Mr. Radford is filing a Motion, which states, without objection to the United States, that there was a plea bargain agreement which stated that the United States would recommend not more than six months imprisonment and receive no more than five years punishment. I believe this was—I do not recollect whether this was called to the Court's attention at that time, or not.

Record on Appeal (80–1331), Vol. 6 at 27. The majority's conclusion that Fuller filed a copy of his plea agreement with the court on February 29 before the hearing began also is equally unsupported. The Notice of Plea Agreement was stamped "FILED" by Judge Fisher's courtroom deputy. Because no other papers were filed by counsel for defendant Fuller on February 29, the Notice of Plea Agreement must have been the "Motion" counsel "just filed" during the hearing and then asked Judge Fisher to review. Record on Appeal (80–1331), Vol. 6 at 28.

Judge Fisher eventually saw through the wavering responses and the flurry of motions to see that the agreements for sentence recommendations for defendants Butler, Evans, Fuller, Hamm, and Washington were reached subsequent to initial guilty pleas. 486 F.Supp. at 1290–93. We have no reason to question his word that, when the prosecutor and counsel for defendant Fuller first sprung this highly unusual procedure on him, he was "misled."