UNITED STATES of America, Plaintiff,

v.

**Marion BRAYBOY and Wallace Mitchell, Defendants.**

**No. 91–6206–CR.**

United States District Court, S.D. Florida.

Sept. 18, 1992.

Lynn D. Rosenthal, Fort Lauderdale, Fla., for plaintiff.

Abe A. Bailey, Miami, Fla., for defendant Brayboy.

Patrict M. Hunt, Fort Lauderdale, Fla., for defendant Mitchell.

## ORDER GRANTING NEW TRIAL

ZLOCH, District Judge.

THIS MATTER is before the Court upon the United States of America's Motion To Set Aside Convictions And To Dismiss Indictment (DE 67) ("Motion"), in which the United States of America seeks to set aside the convictions of Defendants Marion Brayboy and Wallace Mitchell. In considering this matter, this Court has reviewed the entire court file and is otherwise fully advised in the premises.

### I. FACTS

The Defendants originally were indicted along with George Hardy and Ralph Corker for crimes committed as participants in a crack cocaine distribution ring. The Government subsequently dismissed that indictment and issued two separate indictments, one against Marion Brayboy and Wallace Mitchell in this case, and one against George Hardy and Ralph Corker in *United States v. George Hardy and Ralph Corker,* Case No. 91–6208–CR–ZLOCH.

This case proceeded to trial on March 12, 1992. Prior to jury selection, counsel for

the Defendants requested and received all *Brady*-type material as to the Government's key witness, Drug Enforcement Administration Special Agent Ron Johnson. The *Brady* material revealed that Agent Johnson had been inconsistent and inaccurate in providing sworn testimony in other cases and proceedings.

Despite apparent questions about the credibility of their main witness, the Government proceeded to conduct a vigorous prosecution of Defendants Brayboy and Mitchell. This prosecution included the testimony of Agent Johnson, as well as tapes, transcripts and other evidence documenting drug transactions. Even though the defense exhaustively cross-examined Agent Johnson about his previous inaccurate testimony, the jury convicted both Defendants on all counts.

After trial, Defendant Mitchell filed a Motion For Post–Verdict Judgment Of Acquittal Or, In The Alternative, For New Trial And To Compel Continuing *Brady* Disclosure And Incorporated Memorandum Of Law (DE 53) and the Defendant Brayboy filed a Motion For New Trial Or, In The Alternative, Motion For Post–Verdict Judgment Of Acquittal (DE 82). The Government did nothing to support either Defendants' request for a new trial. The Court issued an Order (DE 54) on May 19, 1992, denying Defendant Mitchell's Motion.

On July 16, 1992, the Government dismissed its case against Hardy and Corker, which had not yet gone to trial, and filed the United States of America's Motion To Set Aside Convictions And To Dismiss Indictment (DE 67) ("Motion") in this case. By virtue of that Motion, the United States Attorney sought to compel this Court to issue an Order setting aside the convictions of Brayboy and Mitchell, and to dismiss the indictment, in order to advance the public's interest in preserving the consistency of indictment.

On July 27, 1992, the Court held a hearing on the Government's Motion. The Court inquired extensively into the Government's assertion that it was motivated to take the extraordinary step of setting aside the verdict solely to preserve the seemingly subordinate interest of maintaining consistency in indictment. The Government steadfastly maintained that consistency in indictment was the only interest it sought to advance by the Motion. Further, in response to direct questions by the Court, the Government maintained that it considered the trial of Brayboy and Mitchell to have been without legal impediment, and otherwise fair in all respects, and the evidence used therein to have been truthful.

The Court next issued an Order To Show Cause (DE 71) directed to the Attorney General of the United States, inquiring into the position taken by the executive branch as to the public interest to be served in setting free two crack cocaine dealers. In response to that Order, the United States Attorney requested an *in camera ex parte* hearing, ostensibly to set forth the Attorney General's position. The Court granted that request, and scheduled a hearing.

At the beginning of the hearing, the Court asked the Government about the position it would take at the hearing. Specifically, the Court asked whether the Government intended to assert any public interest to be served by the Motion other than to maintain consistency in indictment. The Government answered that it did not intend to present any public interest other than that previously articulated. The Court also asked whether the Government considered the trial to have been in any way unfair or unjust, or whether there were any legal impediments to the convictions. The Government answered no to all of these questions, and affirmatively stood behind the evidence which led to the convictions of Brayboy and Mitchell. The Court then invited the Government to articulate its position publicly at a hearing scheduled for August 19, 1992.

Prior to August 19, 1992, the Court reconsidered the need for holding the scheduled hearing. The Government had previously set forth its position publicly in its Motion and at the July 27th hearing. Because the Government did not withdraw from the position taken in its Motion and at the hearing, there was no reason to require

the Government to restate its position publicly.

The United States Attorney then filed a Memorandum entitled Response To Order To Show Cause And Memorandum Of Law (DE 79), which purported to respond to the Order To Show Cause on behalf of the Attorney General. In that Memorandum, the United States Attorney questioned the fairness of the convictions of Brayboy and Mitchell for the first time. The position taken in the Memorandum seemed an obvious retreat from the position taken in the Motion itself, and at previous hearings, where the Government consistently supported the fairness of the trial and resulting convictions, and based its Motion solely on the public's interest in maintaining consistency in indictment. The Court scheduled a hearing to clarify the Government's position.

At the hearing, the Government confirmed that it was withdrawing from its position that consistency in indictment was the sole public interest it sought to advance by the Motion. Instead, the Government stated that prior to filing the Motion on July 16, 1992, it had determined its main witness in this case, Agent Ron Johnson, to have been inherently unreliable, and therefore unworthy of belief. The Government cited two instances in the trial of Brayboy and Mitchell where the agent's testimony was inconsistent. The Government also pointed to the demeanor of the agent, and his inconsistent testimony in other cases, as reasons for the conclusion that he was inherently unreliable.

This Court must now decide whether the Government's recent assertions warrant the extraordinary remedy of setting aside the convictions and dismissing the indictment. On several occasions, the Government has cited *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) and *United States v. Hamm,* 659 F.2d 624 (5th Cir. Unit A 1981), in maintaining that this Court actually is required to grant the relief sought. The first question, therefore, is whether allowing agents of the executive to compel a court to set aside convictions simply by filing a motion is an unconstitutional breach of the separation of powers.

## II. SEPARATION OF POWERS

The principle of separation of powers decreed by the Federal Constitution has proven to be "the absolute central guarantee of a just government." *Morrison v. Olson,* 487 U.S. 654, 697, 108 S.Ct. 2597, 2622, 101 L.Ed.2d 569 (1988) (Scalia, dissent). This principle vests in the executive, judicial and legislative branches of government separate powers, with each branch delegated some measure of specifically defined authority to check any abuses by the others. The separation of powers provides an essential guarantee against tyranny, by assuring that no individual branch may accumulate absolute power. For this reason, "The hydraulic pressure inherent within each of the separate [b]ranches to exceed the outer limits of power, even to accomplish desirable objectives, must be resisted." *INS v. Chadha,* 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983).

## III. THE EXECUTIVE POWER— PROSECUTORIAL DISCRETION

■ The primary role of the executive branch is to enforce the laws of the United States. *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). To accomplish this role, the executive possesses an inherent power to prosecute those who violate those laws. Attendant to this power is broad discretion in deciding whom to prosecute. *United States v. Goodwin,* 457 U.S. 368, 380 n. 11, 102 S.Ct. 2485, 2492 n. 11, 73 L.Ed.2d 74 (1982). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

Courts are empowered to intrude into the territory of prosecutorial discretion only when its exercise manifestly violates the

principles of fairness which underlie the Constitution.[1] Rule 48(a), Fed.R.Crim.P., codifies a court's limited authority to intrude upon a prosecutor's decision to dismiss an indictment. That statute provides:

> (a) By Attorney for Government. The Attorney General or the United States Attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such dismissal may not be filed during the trial without the consent of the defendant.

The judicial authority conferred by Rule 48(a) is no different than that possessed by the judiciary with respect to all exercises of prosecutorial discretion.[2] Courts may impinge such exercises which manifestly violate principles of constitutional fairness.

## IV. THE JUDICIAL POWER— CONVICTION AND SENTENCING

While the executive's power extends to the prosecution of criminal defendants, the judiciary's power encompasses conviction and sentencing. *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), clearly illustrates the wall of separation between the executive's dominion in prosecution, and the judiciary's dominion in conviction and sentencing. In that case, the Supreme Court held that while a court may not disrupt the executive's discretion to indict and prosecute under essentially identical statutes, the court is empowered to enter conviction and to sentence on only one statutory violation so as to avoid double jeopardy. The court stated:

Having concluded that Congress did not intend petitioner's conduct to be punishable under (both statutes), the only remedy consistent with the Congressional intent is for the district court, *where the sentencing responsibility resides,* to exercise its discretion to vacate one of the underlying convictions. (Emphasis added).

*Ball,* 470 U.S. at 864, 105 S.Ct. at 1673.

According to the Supreme Court's decision in *Ball,* so sacrosanct is the preservation of prosecutorial discretion in the constitutional scheme of separation of powers, that even when the exercise of such discretion threatens a constitutional right, a court cannot intrude into the territory of the prosecution to preserve that right. Instead, the court must wait until the case has progressed into the area of conviction and sentencing, where the court's power resides, before rescuing the threatened right.

The obvious conclusion to be drawn from *Ball* is that while the responsibility for prosecution rests with the executive, the responsibility for sentencing and conviction rests with the judiciary, and both branches are protected from intrusion by the other.

## V. THE CONSTITUTIONAL ISSUE— INTRUSION UPON THE TERRITORY OF THE JUDICIARY

In *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the Supreme Court considered whether the legislative branch's establishment of a Sentencing Commission to promulgate sentencing guidelines was an unconstitutional infringement on the judicial branch's sentenc-

---

**1.** *See, e.g., Wade v. United States,* 504 U.S. ——, ——, 112 S.Ct. 1840, 1843–1844, 118 L.Ed.2d 524, 531 (1992), "[F]ederal District Courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a prosecutor's broad discretion to exercise peremptory challenges may not be abused to accomplish unconstitutional ends. *Cf., Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985), "The decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

**2.** As stated by the former Fifth Circuit in *United States v. Hamm,* 659 F.2d 624, 628 (1981), "The 'leave of court' requirement of Rule 48(a) is primarily intended to protect the defendant against prosecutorial harassment." That court quoted *United States v. Cowan,* 524 F.2d 504, 513 (5th Cir.1975), in stating that "the executive remains ... the first and presumptively best judge of whether a *pending prosecution* should be terminated" and that this decision should not be judicially disturbed "unless clearly contrary to manifest public interest." (Emphasis added).

ing authority. The court found that while the separation of powers requires that each branch must be separate from the other, the need for workable government allows some measure of "separateness but interdependence, autonomy but reciprocity." *Mistretta,* 488 U.S. at 381, 109 S.Ct. at 659, quoting *Youngstown Sheet & Tube Co.,* 343 U.S. at 635, 72 S.Ct. at 870. In upholding Congress' legislation establishing the Sentencing Commission, the court quoted Madison's view as set forth in The Federalist Papers that the separation of powers is breached when one branch is allowed unfettered control over a power properly vested with another branch:

> 'Separation of powers' he wrote, 'd[oes] not mean that these [three] departments ought to have no partial agency in, or no controul over the acts of each other,' but rather 'that where the whole power of one department is exercised by the same hands which possess the whole power of another department, the fundamental principles of a free constitution, are subverted.'

*Mistretta,* 488 U.S. at 380–381, 109 S.Ct. at 659.

■ There is no question that this Court possesses a sentencing power which vests when a criminal defendant is found guilty after a fair trial. *Ball* illustrates this power, and *Mistretta* affirms its existence. However, the Government contends that it can remove this Court's sentencing authority simply by filing a motion to set aside convictions and to dismiss indictments. Under the Government's theory, a prosecutor can intervene at any point in any case and overturn the fair verdict of a competent jury simply by filing a motion which a court has virtually no power to deny. The Government essentially asserts that it can eliminate the Court's authority to sentence, or if a sentence has been imposed, to set aside that result. As such, the Government claims absolute control over the Court's sentencing authority. It is exactly this type of absolute control by one branch over a power properly vested with another branch that the constitutional scheme of separation of powers prohibits.

## VI. THE CONSTITUTIONAL CHECK AND BALANCE—EXECUTIVE CLEMENCY

■ As previously stated, an essential element of the Constitution's system of separation of powers is that each branch is delegated some measure of specifically defined authority to check any abuses of power by the others. Article II, Section 2 of the Constitution provides a check on the judicial sentencing power by granting the President the authority to pardon convicted criminals. This provision for executive clemency establishes a sort of easement over the exclusive judicial territory of conviction and sentencing, through which the Chief Executive is allowed to pass under extraordinary circumstances. The Constitution includes guarantees against abuse of the pardoning power, by vesting that power exclusively with the highest officer of the executive branch, and by subjecting him to possible impeachment by the legislative branch, and periodic re-election by the electors.

As stated by the Supreme Court in *Ex Parte In The Matter Of Philip Grossman,* 267 U.S. 87, 120–121, 45 S.Ct. 332, 337, 69 L.Ed. 527 (1925):

> Executive clemency exists to afford relief from undue harshness or evident mistake in the operation or enforcement of the criminal law. The administration of justice by the courts is not necessarily always wise or certainly considerate of circumstances which may properly mitigate guilt. To afford a remedy, it has always been thought essential in popular governments, as well as in monarchies, to vest in some other authority than the courts power to ameliorate or avoid particular criminal judgments. It is a check entrusted to the executive for special cases. To exercise it to the extent of destroying the deterrent effect of judicial punishment would be to pervert it; but whoever is to make it useful must have full discretion to exercise it. Our Constitution confers this discretion on the highest officer in the nation in confidence that he will not abuse it.

The very existence in the Constitution of an extremely limited provision for executive clemency, confirms that the Framers regarded executive intrusion into the judicial sentencing function to be a serious breach of the separation of powers. In this case, several distantly removed agents of the Chief Executive have undertaken on their own to grant executive clemency to two convicted drug dealers. The prosecutors' assertion of executive power in this respect is unchecked and unbalanced. They are generally not subject to impeachment, and certainly not subject to periodic re-election.

## VII. THE GOVERNMENT'S POSITION

The Court is sensitive to the position taken by the Government and the Defendants that *Rinaldi* and *Hamm* extremely limit this Court's authority to deny the Government's Motion. Their position emanates from a good-faith but necessarily inaccurate reading of those cases. The Court takes the position that if *Rinaldi* and *Hamm* usurp this Court's sentencing authority to the extent claimed by the Government, an unconstitutional breach of a vital separation of powers occurs.

Under the Government's reading of *Rinaldi* and *Hamm*, any United States Attorney can march into any court, and essentially set free any convicted criminal by filing a motion to dismiss indictment, which articulates any colorable public interest. It would not matter whether the criminal had been in prison for five days or fifty years, or whether the criminal vandalized a postal vehicle or assassinated a head of state. Such a reading of *Rinaldi* and *Hamm* vests a *de facto* pardoning power with agents of the Department of Justice. The only pardoning power which exists in the Federal System is that which the constitution confers upon the Chief Executive, with attendant constitutional guarantees against abuse.

Instead, *Rinaldi* and *Hamm*, though sweeping in their statements of the law, are necessarily limited to their facts. Both *Rinaldi* and *Hamm* involve misrepresentations by Government prosecutors which threaten the integrity of ultimate convictions. In *Rinaldi*, the prosecutor had misrepresented to the district judge that the pending prosecution was not in violation of the Justice Department's Petite policy, which advanced the serious constitutional principles expressed in *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). In its majority opinion, the Supreme Court emphasized the constitutional importance of the Petite policy and fashioned a remedy to advance that policy. It is understandable that the Court would allow usurpation of the judicial sentencing function under such a limited circumstance.

*Hamm* involved an apparent misrepresentation by Government prosecutors to defense attorneys concerning the district judge's acquiescence in the terms of a plea bargain. When the defendants learned that the judge had not consented to the agreed-upon sentences, they unsuccessfully sought to withdraw their guilty pleas and to dismiss the indictments. The former Fifth Circuit held that the district court had abused its discretion in not granting the relief sought. As in *Rinaldi*, the integrity of the convictions was tainted by prosecutorial misrepresentation. Further, the appellate court recognized the compelling government interest in encouraging cooperation in criminal investigations, and fashioned a remedy to preserve that interest.

In this case, there is no Petite issue as in *Rinaldi*, and this case does not involve guilty pleas as in *Hamm*. To grant the relief sought would be an expansion of *Rinaldi* and *Hamm*, and an absolute abdication of this Court's sentencing authority to the whims of prosecutors.

## VIII. CONCLUSION—SEPARATION OF POWERS

As noted by Justice Scalia in his dissent in *Morrison*, any breach in the separation of powers threatens "the proud boast of our democracy that we have 'a government of laws and not of men.'" *Morrison*, 487 U.S. at 697, 108 S.Ct. at 2622. Justice Scalia proceeds to quote the Massachusetts Constitution of 1780, which provides the derivation of this familiar expression:

In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men.

*Morrison,* 487 U.S. at 697, 108 S.Ct. at 2622.

If the executive branch is allowed to scale the walls of separation to force the judiciary to abdicate its sentencing authority, and more seriously, to force a federal judge to confirm this abdication by an order, the rule of law becomes rule by power, as those judged guilty under the law are set free by an unchecked assertion of executive power.

As recently recognized by the Supreme Court, the Constitution provides security against such tyranny.

'[T]he greatest security' wrote Madison, 'against gradual concentration of the several powers in the same department, consists in giving to those who administer each department, the necessary constitutional means, and personal motives, to resist encroachments of the others.'

*Mistretta,* 488 U.S. at 381, 109 S.Ct. at 659, quoting The Federalist No. 51, p. 349 (J. Cooke Ed.1961).

This Judge took an oath to support and defend the constitution of the United States. That oath provides more than a personal motive for the actions taken herein. By virtue of that oath, this Court possesses a solemn duty to resist encroachments on its power by the other branches of government.

Because of the peculiar nature of cases like this one, where both parties are aligned, and therefore neither party has an interest in presenting constitutional impediments to the Court, the constitutional issue discussed herein is one of first impression. The Supreme Court in *Rinaldi* considered only the constitutional implications of the Petite policy, and fashioned a remedy to facilitate the objectives of Petite. The former Fifth Circuit in *Hamm* was presented with compelling reasons to allow dismissal of indictments after guilty pleas, and allowed as much without addressing the constitutional impact.

If the executive branch wishes to set free Brayboy and Mitchell, the Chief Executive may accomplish as much by his constitutional authority to pardon convicted criminals. This Court cannot allow distantly removed agents of the Chief Executive to thwart the separation of powers by granting *de facto* pardons in a case which was fairly decided. This Court, authorized by *Mistretta* to resist encroachment upon its authority, raises this constitutional issue for the first time.

## IX. THE GOVERNMENT'S HEDGING

By its own admission, the Government concluded prior to filing its Motion that its main witness had been so "inherently unreliable" that the trial of Brayboy and Mitchell was unfair and perpetrated an injustice. An initial question for anyone concerned with the administration of justice, is why would the Government wait until the third hearing before revealing such an important fact to the Court? Why would the Government exclude this information from its Motion, and instead cite the diluted reason of maintaining consistency in indictment as the public interest to be served by the Motion? More seriously, why would the Government affirmatively maintain at the two hearings on the Motion, that the trial had been fair, the result just, and the evidence truthful, if it had in fact concluded the opposite?

The answers to these questions lie in the Government's reading of *Rinaldi* and *Hamm.* The Government read those cases as vehicles whereby it could correct the perceived injustice without setting forth a detailed account of its reasons. The Government sought to set free Brayboy and Mitchell in order "to maintain consistency in indictment," and on several occasions argued that the Court was required to sign the Order granting the Motion once such a colorable public interest had been articulated. Even in response to direct questioning,

the Government denied its true motive in seeking dismissal of the indictment.

Therefore, in reliance on *Rinaldi* and *Hamm*, the Government sought to accomplish essentially a backroom deal in the hallowed surroundings of a United States District Courtroom. The Government expected this Court to wink at its diluted assertion of public interest, and to nod at the relief sought. The problem with such action by the Government is that it necessarily destroys the appearance of integrity essential to the operation of the judiciary. This is yet another reason that *Rinaldi* and *Hamm* simply cannot have the impact proposed by the Government. The Court notes with respect to this entire matter that the Office of the United States Attorney for the Southern District of Florida has been anything but candid and straightforward with the Court.

## X. THE CONSTITUTIONAL REMEDY

The question remains, what is the Government's remedy if it determines that a trial which led to convictions lacks some measure of fundamental fairness. In this case, the Government could have presented such a concern to the Court by supporting Defendants' Motions For New Trial. In this way, the separation of powers would have been preserved, as the Court would carefully scrutinize the assertion of unfairness in deciding whether to grant a new trial. If the Court determined that the trial lacked fundamental fairness, it would exercise its inherent power to grant a new trial, and the decision to dismiss the indictment would again be within the broad prosecutorial discretion of the executive branch.

Because the Government has now asserted that the trial lacks some measure of fundamental fairness, this Court, still having jurisdiction over the above-styled cause, again considers the Defendants' Motions For New Trial (DE Nos. 53 and 82). The Court will grant the Defendants' request for a new trial. The United States Attorney can review the testimony and evidence available and decide whether to prosecute the Defendants or to dismiss the Indictment returned against these Defendants and to cause their release. This procedure properly returns prosecutorial discretion to the executive branch.

Accordingly, after due consideration, it is

ORDERED AND ADJUDGED as follows:

1. The Order (DE 54) entered by this Court on May 19, 1992 be and the same is hereby VACATED and of no further force and effect to the limited extent that it denies Defendant Mitchell's Motion For New Trial;

2. The Defendant Mitchell's Motion For New Trial (DE 53) and the Defendant Brayboy's Motion For New Trial (DE 82), be and the same are hereby GRANTED based on the Government's assertion that the original trial of the Defendants Brayboy and Mitchell lacked a measure of fundamental fairness, and the matter shall be reset for Calendar Call and Trial. The Defendants' Motions aforementioned in all other respects are DENIED; and

3. The United States of America's Motion To Set Aside Convictions And To Dismiss Indictment (DE 67) be and the same is hereby DENIED as moot, for the reasons more specifically set forth above.

DONE AND ORDERED.